Potomac Place

# RESIDENT OCCUPANCY AGREEMENT
(non-military family housing)

THIS DOCUMENT IS A <u>LEGAL, BINDING AGREEMENT</u> AND SHOULD BE REVIEWED CAREFULLY FOR AN EXPLANATION OF ANY CLAUSE. CONSULT YOUR LEGAL COUNSEL. INITIAL EACH PARAGRAPH WHERE PROVIDED.

THIS RESIDENT OCCUPANCY AGREEMENT (the "**Agreement**") is made as of **March 26, 2018** by and between **Meade Communties, LLC** (the "Owner") and **Carleen Calypso** (the "**Resident**"). In consideration of the representations made by Resident on his or her application, the independent promises and covenants of each to the other and the rent to be paid, Owner rents to Resident and Resident rents from Owner the Home as defined below on the following terms, conditions, and covenants.

All matters relating to this Agreement will be managed by **Corvias Management - Army, LLC** (the "**Community Manager**"). The Community Manager will serve as Owner's representative. Payments under this agreement must be made payable to Owner and delivered to Community Manager.

1. **DEFINED TERMS.** The following terms used in this Agreement have the following meanings:
   a. **Home.** The residential dwelling unit located at **2935 Olive Court #F, Fort Meade, MD  20755**, not including Common Areas.
   b. **The Installation.** Fort Meade
   c. **Term.** Begins on **May 1, 2018** and ends on **April 30, 2019**.
   d. **Monthly Rent.** Due on the **first** day of each month and equal to **$1,830.00**.
   e. **Late Charge.** **5%** of the Monthly Rent, which will be payable by Resident and collectible by Owner as Additional Rent.
   f. **Bad Check Charge.** **$35.00** payable by Resident and collectible by Owner as Additional Rent.
   g. **Additional Rent.** All amounts in addition to the Monthly Rent which are specified in this Agreement as payable by Resident and collectible by Owner as additional rent, including, but not limited to Late Charges, Bad Check Charges, charges for damages to Home, lockout charges, any cost and expense incurred by Owner for attorney's fees or for filing fees in litigation or otherwise in the enforcement of any provision of this Agreement against Resident.
   h. **Resident.** In addition to the above-named individual, the members of his or her family listed below and collectively referred to as "Resident" or "Occupants":

   Spouse: **N/A**

   Is the spouse active military? **N/A**

   If Yes, last four digits of spouse's SSN: _____

   Children's Name(s):

   Other Dependent Adults/Children:

   i. **Common Areas.** Those areas and facilities that are part of the Development owned by Owner and used by or for the benefit of Resident, Resident's guests, Occupants, agents and/or invitees, including, but not limited to, lawns, parking lots, storage areas, recreational areas, laundry areas, access roads, furnace rooms, utility rooms, stairways, halls, sidewalks, entrance and lobby areas, and elevators.
   j. **Development.** The Home, land, and any and all Common Areas operated as an integral unit by the Owner at the Installation. The Home is a part of the Development.
   k. **Transfer Fee.** If Resident, upon approval from Owner, elects to move to another home in the Development before the end of the Term, Resident will be required to pay a Transfer Fee equal to the Monthly Rent.
   l. **Applicable Law.** This Agreement will be governed by the laws of the State in which the Home is located, to the maximum extent that the Applicable Law applies to leased premises and the courts of such State have jurisdiction over the Home, as well as any applicable Federal laws, any applicable military rules, regulations and/or guidelines, the RRG (as defined below), all of which are hereby incorporated by reference.

2. **ADVANCE PAYMENT.** Before taking possession of the Home, Resident must pay Owner:
   a. Security Deposit: **$0.00**
   b. Monthly Rent Payment: **$1,830.00**
   c. Other: **$0.00**
   d. Pro-Rate Monthly Rent Payment due at or before the time of move-in: **$1,830.00**
   e. Total: **$1,830.00**



3. **PAYMENT OF RENT.** Resident agrees to pay in advance the Monthly Rent for the Home in the amount set forth in Section 1 on the first day of each and every month during the Term. The Monthly Rent is due, without deduction or demand, at the Community Manager's office. Payment by personal check is a privilege accorded by the Owner at its sole discretion and the Owner specifically reserves the right to demand payment by certified check or money order for any and all sums, including Additional Rent, due under this Agreement. Further, the Resident agrees that any sums received by the Owner or Community Manager from Resident may be applied, at its sole discretion, in part or whole, to any obligation due under this Agreement, despite contrary or conflicting directions, verbal or written, appearing with or on the payment made by the Resident. Resident will make all Monthly Rent and Additional Rent payments in full. Any failures by Resident to pay all rent when due will, at Owner's election, cause all Monthly Rent for the Term to be immediately due and payable. Payment or receipt of a rental payment of less than the amount stated in this Agreement will be deemed to be nothing more than partial payment on that month's account. Under no circumstances will Owner's acceptance of a partial payment forfeit Owner's right to (i) collect the balance due on the account, (ii) send a notice of termination of this Agreement and/or commence an eviction or other proceedings for a non-payment of Monthly Rent or Additional Rent, despite any endorsement, stipulation, or other statement on any check or payment.

4. **DELINQUENT PAYMENTS; BAD CHECKS.** If the Owner fails to receive Resident's Monthly Rent payment on or before the close of business on the fifth day of the month in which it is due, a Late Charge in the amount set forth in Section 1 will be paid by Resident and collectible by Owner as Additional Rent for each month the Monthly Rent payment is overdue, and the entire amount of Monthly Rent for the remainder of the Term may, at Owner's option, thereupon become immediately due and payable. In the event Resident offers a check for payment of Monthly Rent, Additional Rent or any other sum due to Owner which is returned to Owner for any reason other than bank error (and the bank provides Owner written notice of such error), a Bad Check Charge in the amount set forth in Section 1 will be paid by Resident and collectible by Owner as Additional Rent.

5. **SECURITY DEPOSIT.** Resident will deposit with Owner a security deposit in the amount stated in Section 2. The security deposit will bear simple interest as required by Applicable Law. Owner will hold the security deposit not more than forty-five (45) days after Resident vacates the Home. Owner may deduct from the security deposit any amounts which arise or are incurred by it as result of Resident's breach of this Agreement and which will include, but are not limited to, the following: (i) any unpaid Monthly Rent, Late Charges, Lockout Charges, Additional Rent, Bad Check Charges; (ii) any fees paid or to be paid to any attorney(s) because of Resident's breach of this Agreement; (iii) any court costs paid or to be paid in the enforcement of this Agreement; (iv) the cost of any repairs, replacements, redecorating and/or refurnishing of the Home or any fixtures, systems or appliances serving the Development not caused by ordinary wear and tear; (v) any vacancy loss caused by Resident's failure to take possession of the Home after Resident has been approved as a resident, and (vi) all other costs and expenses, including re-renting, incurred by Owner. The security deposit does not represent an agreement of any type with respect to liquidated damages and the Owner specifically reserves the right to seek and to collect any and all additional damages to which it may be entitled. The security deposit may not be used at the election of the Resident toward any payment of Monthly Rent, Additional Rent or early termination fees.

6. **POSSESSION.** Resident may take possession of the Home after 8:00 a.m. on the first day of the Term specified in Section 1. In the event Owner cannot deliver possession on that date, Owner agrees to the abatement of Monthly Rent for the period of time from the first day of the Term until the date it offers Resident possession of the Home, or a comparable dwelling unit. In the event possession cannot be delivered to Resident as a result of a previous resident holding over after the end of his or her term, Owner may join Resident as a party to any cause of action to effect the eviction of such previous resident. Owner will not be liable to Resident for any damages or expenses as a result of the previous resident wrongfully holding over after his or her full term. In the event Resident is unable to take possession on the first day of the Term because of a reason attributed to Owner or to a previous resident holding over, Resident may, upon written notice, prior to delivery of possession of the Home, terminate this Agreement.

7. **CONDITIONS AND ACCEPTANCE OF HOME.** The Home will be reasonably safe for habitation when delivered to Resident, and the taking of possession by the Resident will be conclusive proof that the Home was in such a condition, and that no other promise by Owner to Resident with respect to the Home, other than as contained in this Agreement, remains unfulfilled.

8. **INSPECTIONS AT COMMENCEMENT AND TERMINATION OF OCCUPANCY.** The resident and Owner agree that, prior to beginning occupancy of the Home, they will conduct a joint examination of the Home. This examination will be conducted and recorded in accordance with the RRG (as defined below). It will be the responsibility of the Resident to request an exit walk through inspection of the Home with Owner prior to move-out. The walk through inspection must be requested in writing a minimum of five (5) days before the Resident ends occupancy of the Home. Using the record of the pre-occupancy inspection, Owner will itemize any damages or deficiencies in the condition of the Home that exceeded normal wear and tear, and such damages will be the responsibility of the Resident.

9. **UTILITIES.** As part of the Monthly Rent, the Owner will provide <u>**Water, Sewer, Trash/Recycling, Electric, and Natural Gas**</u>. Resident agrees not to waste the Utilities provided by the Owner and to comply with any applicable law, regulation or



**Potomac Place**

guidelines of any governmental authority for the regulation and conservation of utilities or fuels. Resident acknowledges that the Owner cannot be responsible for any interruption or reduction of utility service resulting from Owner's compliance with any law, regulation, guideline or voluntary program for the conservation of energy. Further, Resident agrees that the Owner will not be liable in any manner for the failure to provide or for the interruption of, or for the stoppage of, any utility or for the failure of any mechanical equipment unless it is the result of the Owner's negligent act or omission, which is not corrected, repaired or cured in a reasonable period of time. The Owner is not to be constructed as an agent, associate or partner of any utility provider or supplier.

Resident is responsible for **Telephone (local and long distance), Cable TV (basic and expanded), Satellite Service, and Internet Service (high speed and dial up)**, and any other services directly contracted by Resident with a service provider.

Notwithstanding the forgoing, the Installation-wide implementation of the Army's Energy Conservation Program requires, without further notice, Resident to be responsible for the payment of either some or all utilities servicing the Home, including the payment for all electric or gas consumption (at the prevailing utility rates) in excess of the established "baseline" consumption for the Home, which fluctuates monthly. The methodology for calculation of the "baseline" usage consumption for the Home will be provided to Resident upon request. The Rent will continue to cover Resident's electricity and natural gas costs up to a certain baseline amount established each month for the Home. Whether the amount of Resident's utility usage falls above or below the monthly baseline will determine whether Resident: a) receives money back as a rebate; b) must supplement his or her energy costs by making payment to the third party monitor; or c) do nothing.

*Resident agrees that Monthly Rent is subject to increase during the term of this Agreement for increases in utility rates and heating fuel charges.* The Monthly Rent is based in part on utility rates and charges and heating fuel charges. In the event the costs of any of these items are increased over the amounts allocated for their payment or capital improvements are made to the Development, upon thirty (30) days' advance written notice of such increase, the Monthly Rent Payment due thereafter will be proportionately increased through the remainder of the Term. If the Monthly Rent is increased by more than five percent (5%) above the then current Monthly Rent, Resident may elect to terminate this Agreement and vacate the Home prior to the effective date of the increase by providing Owner written notice of such election within fifteen (15) days after Resident's receipt of the notice of increase.

10. **USE AND OCCUPANCY.** During the Term of this Agreement, the Home will be occupied only by the Resident and those persons listed in Section 1 as a private residential dwelling. Any additional occupants over the age of 18 must be vetted through the Installation and then added to this Agreement as authorized occupants. Regular continued base access will be restricted to only those that have been approved by the Installation.

Occupancy of the Home will be in an orderly manner and in compliance with all local, state and federal laws and regulations and the rules and regulations adopted and issued from time to time by the Owner and/or Community Manager relating to the Development for the mutual benefit, comfort and enjoyment of the residents and the protection of their, and Owner's, property.

Resident is responsible for the conduct of all Occupants and guests. All Occupants and guests must comply with the terms of this Agreement, the Owner's Resident Responsibility Guide (the "**RRG**") and any applicable Army or Installation rules and regulations, each of which are incorporated as part of this Agreement by reference. By signing this Agreement, Resident acknowledges receipt of the RRG and agrees to comply with all rules and regulations contained in the RRG, whether now in effect or subsequently issued by Owner or Community Manager. Violation of the RRG may be considered a violation of this Agreement. Should the Resident, any Occupants or guests fail to comply with any of the terms of this Agreement, Installation rules and regulations, and/or the RRG, then the Resident and/or Occupants may be evicted from the Home.

USE AND QUIET ENJOYMENT: Resident, all Occupants and guests will enjoy the use of the Home in a manner that does not disturb the quiet enjoyment of other residents or create a public nuisance.

Resident will not permit anyone with respect to whom he or she has responsibility, control or influence, to loiter in the Development or to play in any area of the Development except that portion of the Common Areas specifically equipped as play areas. Owner retains the right to designate or restrict uses permitted in Common Areas. Resident agrees that any right to him or her to occupy the Home is conditioned upon Resident, Occupants, guests and anyone in the Development because of Resident, complying with all local, state and federal laws and all rules and regulations contained or referenced herein, including, but not limited to, the RRG. Specifically, the Owner reserves the right to terminate this Agreement for any violation of the above conditions. Further, Resident hereby acknowledges that visits by police to the Home for improper behavior of the Resident, Occupants, guests, or anyone on or about the Development because of the Resident (including family members, friends, guests, visitors, relatives, associates, and acquaintances), will constitute proper and sufficient grounds for termination of this Agreement by the Owner.

11. **GUESTS.** Guests of the Resident or Occupants may not occupy the Home for more than 30 days in a calendar year



Potomac Place

without the written approval of the Community Manager.

12. **RESIDENT'S EMPLOYER/INFORMATION.** Resident warrants and represents the he or she is employed by the United States government. Resident agrees to inform Owner, in writing, of all changes in Resident's work address and phone number. Resident will immediately notify Owner in writing in the event Resident is no longer employed by the United States government. Resident further acknowledges that if Resident ceases to be employed by the United States government, it will constitute proper and sufficient grounds for termination of this Agreement by the Owner. In addition, Resident is required to provide Community Manager with an updated Leave and Earning Statement (LES), or other satisfactory evidence, that Resident is still employed with the United States government before this Agreement may be renewed.

13. **DAMAGES, REPAIRS TO HOME, NOTICE OF REPAIRS, INSURANCE.** Resident will be responsible for all damages and repairs necessary to repair the Home, its fixtures, mechanical systems, plumbing and appliances whenever they have been damaged by the misuse or negligence of Resident, Occupants, guests or any person on or about the Home or Development because of Resident. Resident agrees to pay the costs of those repairs and damages as Additional Rent. At the end of the Term, Resident will return the Home in as good of order as when Resident took possession, except for ordinary wear and tear.

Light bulb replacement will be the responsibility of the Resident.

Resident will give Owner prompt notice of any needed repairs, apparent defects in, or damages to, the Home and its plumbing, electrical wiring, roof, structural walls, heating and air conditioning equipment, or any other part of the building in which the Home is located, including all Common Areas of the Development. Owner agrees to maintain and repair with due diligence the Home and Common Areas upon notice by the Resident as provided above. Notwithstanding the forgoing, Resident will be responsible for the costs of said maintenance and/or repairs in accordance with this Agreement.

*RESIDENT ACKNOWLEDGES THAT OWNER IS NOT AN INSURER OF RESIDENT'S OR GUEST'S PERSONAL PROPERTY.* During the Term of this Agreement, Owner may require Resident to obtain a renter's insurance policy, at Resident's sole cost and expense. Owner will provide Resident with thirty (30) days' advance written notice if Resident is required to obtain such insurance. If Owner provides Resident notice that he/she is required to obtain a renter's insurance policy, Resident will do so within the timeframe specified in the notice and will continue to maintain such coverage for as long as Resident or the Occupants occupy the Home. *RESIDENT IS URGED TO OBTAIN INSURANCE COVERING THE HOME AND HIS OR HER PERSONAL PROPERTY.*

14. **SUBLEASING.** Resident may not sublet, transfer or assign this Agreement or permit any part of the Home to be used by any person other than those listed in Section 1.

15. **PETS:** Resident will be required to sign a Pet Addendum prior to having any pets in the Home. Resident will adhere to all Department of the Army Pet Policies, the RRG and the Pet Addendum at all times.

Tenant Intials: C.C.

16. **ALTERATIONS; RETURN OF HOME.** Except as provided by law, Resident may not make repairs or any interior or exterior alterations of the Home without Owner's prior written consent. Resident must notify Owner in writing of any repairs, decorations or alterations contemplated, including, but not limited to, painting and wallpapering.

Owner and Community Manager are committed to the principles of fair housing. In accordance with fair housing laws, Owner or Community Manager will make reasonable accommodations to their rules, policies, practices or services and/or will allow reasonable modifications under such laws to give persons with disabilities access to and use of the Home. In the event that Resident requests any such accommodation/modification, Resident will be required to sign an addendum to this Agreement regarding the approval and implementation of such accommodations or modifications, as well as restoration obligations, if any. Resident will hold Owner and Community Manager harmless and indemnify them as to any mechanics lien recordation or proceeding caused by repairs or alteration actions undertaken by or at the request of Resident.

17. **COMMON AND RECREATIONAL FACILITIES.** Any common facilities provided by Owner for Resident use (such as laundry facilities, if applicable) will not be misused or abused by Resident or anyone on or about the Development because of Resident. Owner reserves the right to change or eliminate any such facilities or to restrict use or access thereto. Resident will be responsible for any damage to any such facilities/appliances caused by him or her or anyone on or about the Development because of Resident.

Resident may use the recreational facilities in the Development at no cost only as Owner directs for the common safety and convenience of all its residents. Owner may discontinue providing these facilities or limit or restrict their use at any time without liability. Resident expressly acknowledges that use of such facilities is at Resident's own risk and/or the risk of any person on or about the Development because of Resident.

18. **KEYS AND LOCKS; SHOWING OF HOME; ACCESS.** In order to facilitate its response to emergencies and fire, police and health matters, Owner retains passkeys to all locks on doors in the Development. Owner will grant access to fire,

4



Potomac Place

police and health officials when required. Owner will have the right during the last sixty (60) days of the Term to show the Home to prospective residents upon reasonable notice and at reasonable hours, including weekends.

Resident hereby acknowledges receipt of **2** key(s) and **0** garage door opener(s) for the Home. Locks may not be changed, modified or added without the written permission of Owner. If permission is granted, the Resident will promptly furnish Owner with a key to each lock, without charge to Owner. Any lock modifications made must be restored to their prior condition before Resident vacates the Home, unless Owner accepts the modification, in its sole discretion. All keys and garage door opener(s) must be turned into Owner by the earlier of twenty-four (24) hours after vacating the Home or the move-out inspection. Failure to return any keys or garage door openers, as well as any request for replacement keys or garage door openers, will result in a charge as set forth below:

| | |
|---|---|
| House & Mailbox Keys | **$10.00** |
| Garage transmitter/remote | **$50.00** |

19. **PERMISSION TO ENTER.** Owner, Community Manager, their employees, agents and/or contractors will have access to and may enter the Home:
    a. In case of emergency;
    b. When Resident has abandoned or surrendered the Home;
    c. In order to ensure the Home is maintained and not in need of repair;
    d. In order to ensure that the Resident's use of the Home is in conformity with the provisions of this Agreement;
    e. To make necessary or requested repairs, decorations, alterations, or improvements, or to supply necessary or requested maintenance or services. Resident retains the right to request an appointment for completion of necessary or requested repairs; however, Resident's report of damage or request for service provides permission to enter at reasonable hours without prior notice. Resident may be present; however, entry is not conditioned upon such presence and Resident agrees to hold Owner and Community Manager, their employees, agents and contractors harmless for such entry; or
    f. Any other purpose permitted by applicable law.

    The permission extended to Owner under this section is in addition to the right of Owner to reenter to show the Home to prospective residents as set forth above.

20. **INSTALLATION AUTHORITY.** The Home is located within exclusive federal jurisdiction of the United States and therefore under military control, which includes the Installation Commander's inherent authority and obligation to ensure good order and discipline. As such, the Installation Commander has the right and power to inspect, search and/or order the inspection or search of military persons and property on the Installation.

21. **STORAGE AND PARKING.** Resident may use the storage and parking areas in the Development at no cost, and only as Owner directs for the common convenience of all its residents. No personal property may be stored in the Common Areas except designated storage areas assigned to the Resident. Owner reserves the right to discontinue providing these areas at any time, in which event Resident will immediately remove all goods and vehicles as Owner directs. If, at Resident's request, Owner's employees move, store or handle any goods or vehicles, they do so at Resident's own risk.

    The parking area is to be used only to park automobiles and small trucks (3/4 gross tons or smaller). All other vehicles will be towed at the vehicle owner's expense. Unlicensed vehicles, inoperable vehicles, trailers of any type, boats, and permanently stored or parked vehicles are expressly prohibited from the parking areas. Further, no more than two vehicles per Home may be parked in the parking areas without the prior written consent of Owner. The washing or repairing of vehicles anywhere in the Development is prohibited unless the Owner specifies a designated area.

22. **FIRE HAZARDS.** Resident may not keep gasoline, paint or other flammable material in the Development (except as fuel in motor vehicles), nor do or permit any hazardous act which might cause fire or which may increase the rate of insurance on the Home or Development. Prohibited activities in the Development include the keeping and using of candles and kerosene lamps. Only battery-powered lighting may be used for light if electricity is terminated or interrupted. If the Home becomes uninhabitable by reason of a natural disaster or because of fire not caused by the act or omission of Resident, Occupants or any person or persons under Resident's control, the Monthly Rent will be suspended until the Home has been restored to a habitable condition. Owner is not obligated to rebuild or restore the Home and in the event Owner elects not to rebuild or restore the Home, this Agreement will terminate as of the date the Home became uninhabitable due to fire or natural disaster.

23. **RULES AND REGULATIONS.** During the Term of this Agreement, the Resident agrees to consult and comply with all rules and regulations covering the Development in which the Home is located. Resident acknowledges receipt of RRG and agrees to be bound by any future RRG and any other rules and regulations as adopted or modified by Owner upon delivery to or availability of the same to Resident. Any violation of the RRG or other rules and regulations, as the same may be changed, will be a breach of this Agreement. Resident acknowledges that he or she is also obligated to comply



with any laws, rules, regulations, or policies that may be imposed by the Installation or the federal government, as may exist from time to time during the Term.

24. **ENFORCEMENT EXPENSE PAYMENTS, ADDITIONAL RENT.** Residents agrees to pay any and all administrative, professional and attorneys fees and expenses, filing fees for litigation, and any other cost and expense (including but not limited to filing fees and sheriff or constable fees) incurred by Owner in enforcing the provisions of this Agreement against Resident for any breach of this Agreement by Resident or for any act or omission by Resident or any person in the Development because of Resident. All such costs and expenses will be paid as Additional Rent. Resident's obligation to pay such fees, expenses and/or costs continues regardless of initiation or conclusion of any legal proceedings.

25. **MOVE-OUT.** Upon vacating the Home, Resident will: (i) remove all interior decorations made by Resident, (ii) restore the Home to its condition at the time of move-in, except for ordinary wear and tear, and (iii) insure that the Home is clean and free of all personal property and trash.

26. **TERMINATION.**
    a. When either Resident or Resident's spouse is a Department of Defense federal employee who supports members of the Armed Forces of the United States, is a member of the National Guard serving on full-time duty or is a Civil Service employee with a National Guard unit, this Agreement may be terminated by Resident without payment of any penalty, liquidated damages, or rent that would have otherwise been due for any period following the approved termination date, provided the Resident or Resident's spouse:
       i. Has received permanent reassignment to another Department of Defense installation in excess of 50 miles from the Installation; or
       ii. Discontinues employment with the Department of Defense.

    If Resident seeks early termination of this Agreement pursuant to the provisions of this section, Resident must deliver to Community Manager written notice stating the grounds for early termination, together with appropriate documentation supporting the grounds for early termination. The notice must also state an effective date for the termination, which may not be less than thirty (30) days after the date of Community Manager's receipt of the notice, except when an earlier termination date is necessary to comply with permanent reassignment orders or termination of employment. The final month's Monthly Rent owed hereunder will be prorated based on the number of days in the calendar month in which the early termination occurs. Such prorated rent will be payable at such time as would have otherwise been required by the terms of this Agreement.

    b. For early termination not described above, provided Resident is not in default under this Agreement at the time of giving notice, Resident may terminate this Agreement early by:
       i. Delivering to Community Manager sixty (60) days written notice of Resident's intent to terminate;
       ii. Paying all Monthly Rent and any Additional Rent due through the requested date of termination;
       iii. Paying an amount equal to the Monthly Rent and any owed Additional Rent as liquidated damages; and
       iv. Paying an amount equal to the Security Deposit held by Owner as an early termination fee.

    The foregoing amounts are all due and payable at the time the early termination notice is delivered to Community Manager.

27. **TERMINATION FOR BREACH OF AGREEMENT.** All covenants and provisions of this Agreement are material and independent. Should the Resident, Occupants, guests or anyone on or about the Development because of Resident at any time breach any of the covenants, agreements, undertakings and/or provisions of this Agreement, or should the Resident, Occupants, guests or anyone on or about the Development because of Resident, engage in conduct that is unreasonable, annoying, objectionable or improper or interferes with the rights, comfort, quiet and convenience of other residents or the property rights of the Owner or any person lawfully in the Development, or any other breach of this Agreement, then the Owner will have the right to terminate this Agreement by giving the Resident a written notice demanding that Resident vacate the Home. The notice will be delivered to the Resident personally, by registered or certified mail (return receipt requested) or by leaving it at the Home. If after delivery of said notice, Resident fails to vacate the Home on the date specified, Owner will then be entitled, without any further notice to Resident, to exercise the summary remedy provided by Applicable Law against Resident as a Resident holding over.

If Resident fails to pay the Monthly Rent when due, Owner may, without notice to Resident, institute any appropriate court action for any or all of the following: (i) repossession of the Home; (ii) all Monthly Rent then due; and (iii) all other damages sustained by Owner. In the event the Resident's right to occupy the Home is terminated by court action, or if Resident vacates the Home voluntarily, Owner may re-enter and re-let the Home for such rent and upon such terms as the Owner, in its sole discretion, believes reasonable. Resident will remain liable for any deficiency in Monthly Rent or for any other amounts due to Owner pursuant to this Agreement, including, but not limited to, court costs and attorney(s) fees, all other costs directly or indirectly incurred by the Owner in re-letting the Home, and any other damages sustained by Owner because of the Resident's use, occupancy and vacation of the Home. After totaling all said amounts through the end of the



Term, the rent paid by the replacement resident(s) will be credited to said total amount. Resident will then pay to the Owner any remaining balance after application of the aforesaid credit.

28. **END OF TERM; RENEWAL.** At least sixty (60) days prior to the end of the Term, Community Manager will inform Resident of the various renewal options (if any). Alternatively, if Resident does not want to extend or renew the Term, Resident will provide at least sixty (60) days prior written notice before the end of the Term to Community Manager of Resident's intent to vacate the Home. If Resident and Community Manager agree on an option for another term, a new Agreement will be executed by Resident and Community Manager to reflect the option selected. If Community Manager fails to notify Resident of renewal options, or if the Resident and Community Manager do not agree on a renewal option, this Agreement will automatically renew on a month-to-month basis, at an additional month-to-month fee to be determined by Owner, during which time Resident may terminate at any time by providing at least sixty (60) days' prior written notice to vacate. By initialing here, Resident acknowledges that he/she has specifically reviewed and approved this automatic renewal provision.

Resident's Initials: 

29. **NOTICES.** All notices required by this Agreement will be sent to Owner in care of the Community Manager and to Resident at the Home, unless either sends to the other, by registered or certified mail, return receipt requested, notice of another address for notices. Willful refusal to accept a notice provided for by this Agreement will be a breach of this Agreement.

30. **RIGHT TO RELOCATE RESIDENTS.** Owner reserves the right to relocate Resident due to: (a) scheduled/planned construction and renovation projects, or (b) dissatisfactory habitability conditions. Owner will give Resident reasonable written notice of its decision to relocate the Resident (the "**Relocation Notice**"). Within fifteen (15) days of the date of the Relocation Notice, Resident must inform Owner in writing whether he or she accepts the relocation, or if Resident elects to terminate this Agreement. In the event Resident accepts the relocation, Owner will, in its sole discretion, either directly pay for, or reimburse Resident for, all reasonable costs directly associated with the physical move to a new home within the Owner's housing area on the Installation, as well as the reasonable costs of reconnection of cable, telephone, and other utilities. Notwithstanding the forgoing, relocations directed by Owner due to dissatisfactory habitability conditions caused by Resident, Occupants or guests, will be at Resident's sole cost. In such event, Resident will also be responsible for the cost of remedying any such conditions. In the case of any relocation or termination of this Agreement pursuant to this paragraph, Resident will be responsible for the pro-rated Rent due for all days that the Home is not fully vacated of all persons and personal property.

31. **SUBORDINATION.** This Agreement is subject and subordinate to all security interests which may now or hereafter affect the Development and Home and to all renewals, modifications, consolidations, replacements and extensions thereof in confirmation of such subordination and, also, for the purpose of making this Agreement subordinate to such security interest. Resident hereby irrevocably constitutes and appoints Owner as Resident's attorney-in-fact coupled with an interest to execute any such certificate or certificates for Resident and on Resident's behalf.

32. **WAIVER OF BREACH, NOT GENERAL WAIVER.** No waiver of any breach of the covenants, provisions or conditions of this Agreement will be construed as a waiver of any subsequent breach and, if any breach occurs and afterwards be compromised, settled or adjusted, this Agreement will continue in full force and effect as if no breach, compromise, settlement or adjustment had occurred. Receipt by Owner of any sums due under this Agreement with knowledge of the breach of any covenant or condition hereof will not be deemed in any manner a waiver of such breach. Owner's failure to insist upon a strict performance of any covenant, condition right or option will not be considered a waiver of any right of Owner and, upon any future breach of any covenant or condition herein contained, all past breaches will be expressly revived and will constitute grounds for termination of this Agreement as provided herein.

33. **REPRESENTATIONS, BINDING, TIME.** Resident agrees that Owner has relied upon the representations made by Resident in his or her application and in the event that any such representations are found to be misleading, incorrect or untrue, Owner will have the right to cancel this Agreement, recover the Home and recover any and all damages, lost rents, expenses, including attorney's fees and court costs, incurred as a result of thereof. This Agreement represents the complete agreement between Resident and Owner and supersedes all prior agreements and representation, except Resident's representations set forth in the Resident's application. No subsequent alterations, amendment, change or addition to this Agreement will be binding upon Owner or Resident unless reduced to writing and signed by the parties.

This Agreement and all its terms, covenants and conditions will be binding upon the assigns, personal representatives and heirs of the Resident and Owner. Time is of the essence under this Agreement.

34. **CAPTIONS, HEADINGS AND CONTEXT.** The captions and headings throughout this Agreement are for convenience and reference only and will not affect the interpretations, meaning, scope or intent of this Agreement. Where the context requires, the singular will be substituted for the plural and vice versa and words in the masculine will be substituted for any gender.



35. **SEPARABILITY.** If any covenant, provision or portion of this Agreement as applied to any person or circumstances will, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such covenant, provision or portion to persons or circumstances other than those as to which it is held invalid or unenforceable will not be affected.

36. **RECEIPTS.**

    Resident acknowledges receipt of:
    i. If the Home was built before 1978, the booklet published by the United States Environmental Protection Agency "Protect Your Family From Lead in Your Home" and a Lead Based Paint Disclosure form. Resident agrees that he or she has received these forms, which are incorporated herein by reference.
    ii. Owner's current materials concerning mold and mold prevention.
    iii. The RRG, the provisions of which are incorporated into this Agreement by reference.

37. **PERIMETER SOIL:** The Resident acknowledges that chlordane and other pesticides may be present around the perimeter of the foundations of the Home, from the edge of the foundation to just beyond the drip-line of the roof of each building. The Resident, guests and all occupants agree not to disturb the soil in this area.

38. **MOLD:** The Resident acknowledges that to avoid mold growth it is important to prevent excessive moisture buildup and agrees to remove visible moisture accumulation as soon as it occurs and immediately report to Owner any evidence of excess moisture or mold or mildew inside the Home. Resident acknowledges receipt of the "Mold Information and Prevention Addendum", which is incorporated herein by reference.

39. **EXCULPATION OF OWNER.** Owner will not be liable to Resident or to Occupants, family members, agents, representatives guests or employees of Resident for, and Resident expressly releases and discharges Owner from, all injury, loss, damage or liability not arising from any omission, fault, negligence or other misconduct of the Owner, it representatives, agents and employees on or about the Home or any elevators, hallways, Common Areas or other appurtenances used in connection therewith. In addition, Resident agrees to indemnify and hold harmless Owner from and against all liabilities, obligations, damages, costs, charges and expenses (including attorney's fees) which may be imposed upon or incurred by Owner as a result of a claim against Owner with respect to any of the matters, and made by an persons, referred to in the preceding sentence.

    Resident acknowledges that the Home is located on an active military installation under federal jurisdiction. Resident acknowledges and understands that the Installation is subject to federal, including military, law enforcement and security measures, including, without limitation, restrictions on access to the Installation and searches and seizures of vehicles, dwellings, and other property. Resident understands that Resident is solely responsible for complying with any vehicle registration and other requirements that may be imposed or desirable in connection with obtaining access to the Installation. Resident further understands that he or she and other authorized occupants of the Home may be required to comply with such regulations and requirements as military authorities at the Installation may impose. Owner will not be liable to Resident or to family members, Occupants, agents, or guests of Resident and Resident expressly releases and discharges Owner from, all injury, loss, damage or liability not arising from any omission, fault, negligence or other misconduct of Owner, its representatives, agent, or employees in connection with any restriction, limitation, or inconvenience in any way related to or arising from the Installation's status and operation as a military installation, including, without limitation, restrictions on access to the Installation, law enforcement and security operations, and other sovereign or proprietary acts or omissions of the United States government and any of its instrumentalities. In addition, Resident agrees to indemnify and hold harmless Owner from and against all liabilities, obligations, damages, costs, charges and expenses (including attorney's fees) which may be imposed upon or incurred by Owner as a result of a claim against Owner with respect to any of the matters and made by an persons, referred to in the preceding sentence.

40. **ACKNOWLEDGEMENT AND RELEASE WITH RESPECT TO NOISE.** Resident acknowledges that the Home is located on an active military installation where military training exercises are conducted and that such training exercises may emit very loud noise from time to time, which may exceed recommended residential noise limits and interfere with Resident's quiet enjoyment of the Home. RESIDENT HEREBY WAIVES AND RELEASES ANY CLAIMS, ACTIONS, SUITS, AND CAUSES OF ACTION AGAINST OWNER, COMMUNITY MANAGER, THEIR AGENTS, MEMBERS, OFFICERS, EMPLOYEES, ASSIGNS, SUCCESSORS, PARENTS AND AFFILIATES ARISING OUT OF OR RELATING TO NOISE EMITTED FROM MILITARY OPERATIONS OR TRAINING EXERCISES CONDUCTED AT THE INSTALLATION.

    RESIDENT ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT, OR HAS HAD EACH PARAGRAPH OF THIS AGREEMENT EXPLAINED TO HIM OR HER BY A COMPETENT PERSON OTHER THAN OWNER OR COMMUNITY MANAGER, AND FURTHER ACKNOWLEDGES THAT ANY FAILURE BY RESIDENT TO INITIAL ANY PARAGRAPH WITH A BOX FOR SUCH PURPOSE DOES NOT CONSTITUTE AN EXCEPTION TO SUCH PARAGRAPH FROM THE COVENANTS TO WHICH RESIDENT AGREES.



Potomac Place

**IN WITNESS WHEREOF**, the parties have attached their hands and seals on the day and year first above written.

| Signed by Carleen Calypso<br>Thu Apr 5 02:39:43 PM EDT 2018<br>Key: C888E833; IP Address: 96.70.161.106 | | Signed by Connie Conwell<br>Thu Apr 5 02:45:43 PM EDT 2018<br>Key: 1379386A; IP Address: 96.70.161.105 | |
|---|---|---|---|
| Carleen Calypso *(Resident)* | Date | Connie Conwell *(Authorized Signatory of Property Manager, the authorized agent of Meade Communities, LLC)* | Date |

